SARAH STUCKEY *vs.* THE RHODE ISLAND COMPANY.

ALBERT STUCKEY *vs.* THE RHODE ISLAND COMPANY.

JANUARY 12, 1920.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

*(1) Negligence. Common Carriers. Personal Injury. Non-Expert Evidence. Reversible Error.*

The admission of evidence of a plaintiff in a personal injury action, in describing the nature of her injuries, and the medical terminology thereof, constituted reversible error, such evidence being inadmissible both as hearsay and as beyond the competence of a non-expert witness.

*(2) Negligence. Common Carriers. Personal Injury. Evidence. Reversible Error.*

In a personal injury action, evidence regarding a second injury to plaintiff's knee which occurred more than two years after the injury alleged to have resulted from the accident in suit, and as to expenses incurred and pain and suffering, after the second accident, there being nothing to show that the condition of the knee arising from the accident in suit was the cause of the second injury, but on the contrary there being evidence tending to show a complete recovery from the first injury prior to the second, was inadmissible and constituted reversible error.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant and sustained.

PARKHURST, C. J. These are two actions of trespass on the case for negligence, brought by a husband and wife, the action of the wife being for personal injuries, and that of the husband for loss of services, expenses of illness, &c.; the two actions were tried together before a judge of the Superior Court and a jury in January, 1919, and resulted in a verdict for the plaintiff in both cases. The cases have been brought to this court upon the defendant's bills of exceptions, which are identical.

It appears from the evidence substantially as follows: On Sunday evening, May 14, 1916, the plaintiff, Sarah Stuckey, was on her way from Central Falls, R. I., to her home in the Olneyville or Mount Pleasant section of Providence. The plaintiff had reached Main Street Square, in Pawtucket, about 7:20 P. M., where she had alighted from

the car which had taken her from Central Falls. It was getting dark and the lights on the street cars had been lighted. The plaintiff testified that she stepped up to the rear platform of the car concerned in the accident, a Providence-bound car, and asked the conductor of the car questions concerning the destination of the car. The plaintiff claims that immediately upon receiving answers from the conductor she started to board the car and had one foot on the step and one hand on the grab handle when the car suddenly started up and threw her. The defendant contends and the evidence tended to show that the plaintiff, Sarah Stuckey, stepped up to the rear platform of the car where the conductor was standing and after asking a certain question turned away and started back toward the sidewalk without making any attempt to board the car; that after the car started up and had gone some few feet the plaintiff changed her mind, ran after the car, stumbled in some way and fell in the street. The plaintiff, Sarah Stuckey, testified that she had injured her knee as result of the accident.

In our view of the case, this court feels that it is necessary to consider only exceptions Nos. 1–5, inclusive, those exceptions being based upon certain testimony of the two plaintiffs themselves, which was allowed to be introduced against defendant's objection, and as to which exceptions were duly noted on behalf of the defendant.

The questions raised by these exceptions may be stated as follows:

I. Did the trial court err in allowing the plaintiff, Sarah Stuckey, to testify as to the nature of her injuries, their medical terminology, etc., or should said plaintiff have been confined to testimony relating to the outward appearance of such injuries and to various symptoms experienced by her such as pain and suffering, etc.?

(Defendant's exceptions 1 and 2.)

II. There being a history of another accident which occurred to the plaintiff, Sarah Stuckey, between the date of the accident giving rise to the case at bar and the trial

·thereof resulting in certain injuries being sustained by said plaintiff did the trial court err in admitting certain evidence under the record as it then stood, as to pain and suffering, loss or losses sustained by said plaintiffs, Sarah Stuckey and Albert Stuckey, subsequent to the date of said second accident?

(Defendant's exceptions 3, 4, and 5.)

The testimony leading up to the defendant's first and second exceptions is found on page 15 of the transcript; the plaintiff, Sarah Stuckey, was the witness in direct examination: "123 Q. What was the matter with you while you were in bed?  A. My knee was the trouble, my left knee. 124 Q. What was the matter with it?  A. I got hurt on the car.  125 Q. What was the condition of it?  A. I couldn't tell just what the condition of it was."  Here the defendant objected to the further questioning of the witness on this subject substantially for the reason that the plaintiff admitted that she knew nothing of the actual condition of her knee and therefore any further questions would call for opinion evidence, not for facts; that not being an expert she was not qualified to testify.  The plaintiff, over the defendant's objection, was allowed to continue to describe the nature of her injuries, even to naming the medical term "dislocated cartilage of the knee," (127 Q. p. 16 Transcript) and the defendant's motion to strike out the testimony was denied.  Transcript p. 16 continues:  "126 Q. What was the condition of the knee when you looked at it, Mrs. Stuckey?  What would you say its condition was, when you looked at it?  A. It was all swollen and sore.  I couldn't move it.  It was swollen out like that.  I couldn't say just what the doctor called it.  It was a funny name, something like dislocated cartilage of the knee.  127 Q.  You can't remember the funny name?  A. Yes, sir, something like 'dislocated cartilage of the knee.' "  Defendant's attorney moved to strike out and the motion was denied.

We think these rulings of the court were clearly erroneous. The attending physician was not called, and it does not

appear from the record that before the trial any effort was made to secure his attendance; it does appear by inference that plaintiff did not summon him, and it further appears that the plaintiff only went to get him after the trial opened, during a recess, and then found that the doctor was out of the city. The above recited testimony was an attempt on the part of plaintiff's attorney to get before the jury the effect of the expert opinion of the doctor through the non-expert plaintiff, and the testimony admitted and permitted to stand was inadmissible both as hearsay and as beyond the competence of the non-expert plaintiff, upon all the authorities cited by defendant (nothing to the point being cited on behalf of the plaintiffs).

Wigmore on Evidence, Vol. 3, Sec. 1975, p. 2618, states the law on this question as follows: "Testimony to the actual condition of health (for example, the existence of a disease or wound) differs from testimony to the preceding class of topics in that it concerns the internal actuality and not the external appearance. This difference is important with reference to the experiential qualifications of the witness, in that for the former a medical expert will usually be required."

In *Atlanta Street Railroad Company* v. *Walker*, 93 Ga. 462, where the opinion of a non-expert plaintiff was allowed to be given regarding the permanency of his injury, the court said, page 465: "The plaintiff was competent to testify to his feelings, pains and symptoms, as well as to all the characteristics of the injury, external and internal. This was the limit of his competency, and any opinion legitimately arising out of the facts could be more safely formed by the jury than by him. Scarcely anything is less reliable than a sick plaintiff's opinion of his own case when he is in pursuit of damages." The admission of the testimony was held to be error.

In *Thompson* v. *Bertrand*, 23 Ark., at page 733, the court said: "To make an opinion upon disease competent testimony, it must be given by one skilled in the science and

practice of medicine." See to the same effect in principle: *U. B. Mutual Aid Society* v. *O'Hara*, 120 Pa. St. 256, 265; *Zinn* v. *Rice*, 161 Mass. 571, 576; *Dominick* v. *Randolph*, 124 Ala. 557, 562; *Redd* v. *State*, 63 Ark. 457; *McLean* v. *State*, 16 Ala. 672, 679; *Boies* v. *McAllister*, 12 Me. (3 Fairfield) 308; see also *Inhabitants of Ashland* v. *Inh. of Marlborough*, 99 Mass. 47, where it was expressly held that a statement by a non-expert witness that the doctor had told him that he had kidney disease was incompetent, and inadmissible.

See also, *Motton* v. *Smith*, 27 R. I. 57, where this court said: "That a witness can not testify as an expert unless he be an expert, is elementary law and familiar practice," the case being one where the owner of jewels, alleged to have been converted, was allowed to testify as to their value, although not qualified as an expert, on the ground that she was the owner: Held error, and new trial granted.

Exceptions Nos. 1 and 2 are therefore sustained.

(2) As to the second question above stated, whether there was error in allowing testimony regarding a second injury to Mrs. Stuckey's knee which occurred about six months before the trial, and more than two years after the injury alleged to have resulted from the accident on which this case was founded, we think there was manifest error in this regard. With regard to this second injury to the knee the plaintiff Sarah Stuckey testified (Transcript pp. 50, 51), as follows: "387 Q. When you hurt your knee the second time, what did you do? A. I was getting some clothes that I was taking up into the attic and I made kind of a little trip on it and caught myself against one of the stairs, and it just threw me like that against one of the stairs,—that's all. 388 Q. You tripped against the stairs? A. You know how you will, going up stairs, trip against the next step." . . . "392 Q. Before this accident happened—referring to your accident, Mrs. Stuckey—what was your health? A. Fairly well, always well enough to do my work and to get around. That is as well as a woman of my age would be or could be." In spite of this prior testimony, the plaintiff, Albert Stuckey,

was asked the following questions in direct examination, beginning page 68 of the transcript: "59 Q. Do you know of your own knowledge whether or not your wife has had to call the doctor with reference to that same knee a second time?  A. Yes, sir, she has.  60 Q. Did you notice the knee then?  A. Yes, sir.  61 Q. How long ago was it then?  A. About six months I should judge.  62 Q. What was her condition then?"  Here the defendant objected on the ground that there was a history of the other accident referred to *supra* and that it was unconnected with the street car accident which had caused the same injury to the plaintiff's knee and, therefore, the testimony was irrelevant.  The plaintiff, Albert Stuckey, was also, over the defendant's objection (Transcript, pp. 70, 71, 72), allowed to testify as to expenses incurred by him after the date of the second accident and as to pain and suffering after the second accident.  The defendant contends that the testimony as to injuries and the damages arising therefrom should have been strictly limited to those which arose prior to the second accident.

We think this contention of the defendant is well founded. There was nothing in the evidence to connect the second injury to the plaintiff's knee with the street-car accident, nothing to show that the condition of the knee arising from the street-car accident was the cause of the second injury; on the contrary the testimony above quoted tends to show a complete recovery from the first injury prior to the time six months before the trial, when she tripped and fell upon the stairs.  There was error in admitting this testimony; from it the jury might deem it fair to draw an inference that, because the court deemed it proper to admit it, it was in some way connected with the street-car accident and that the pain, suffering and expense due to and arising from the second injury to the knee might be considered as increasing the damages arising from the first injury.  Exceptions Nos. 3, 4 and 5 are therefore sustained.

Exceptions Nos. 6 and 8 are not pressed.

Exception No. 7 relates to the refusal of the trial judge to continue the case over to the next jury session of the court to give the defendant time to procure certain witnesses whose presence he had not before deemed material; exceptions Nos. 9, 10 and 11 relate to the denial of defendant's motion for a new trial. Inasmuch as this court has found reversible error, in the above rulings regarding the admission of testimony, which requires a new trial, it is not necessary to pass upon these latter exceptions (7, 9, 10, 11) because the defendant will have an opportunity to summon such witnesses at the new trial; and the testimony before the jury at such new trial will not be the same as now appears in this transcript.

Defendant's exceptions Nos. 1–5, inclusive, are sustained, and the cases are remitted to the Superior Court sitting in Providence county with direction to grant a new trial in both cases.

*Pettine & DePasquale,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.

