STATE *vs.* EARL LAMBERT MANNING.

DECEMBER 26, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

CAPOTOSTO, J.   This is a criminal complaint charging that on August 31, 1939, the defendant, with intent to receive compensation therefor, did practice medicine, he not being registered and authorized so to do, in violation of general laws 1938, chapter 275, § 8.  At the trial in the superior court the jury returned a verdict of guilty.  The defendant presses the following exceptions before us:  First, an exception to the denial of his motion to take the case from the jury; second, an exception to the denial of his motion that the court direct a verdict of not guilty; and third, an exception to the charge of the court.

Margaret George, a witness for the state, testified that about 4 o'clock, p. m., on August 31, 1939, her daughter Betty, a child eight years of age, complained of nausea and severe pains in the abdomen; that she called defendant's office and made an appointment with his nurse for that evening; that she kept the appointment and met the defendant, who then examined Betty by pressing the abdomen and in other ways, including the taking of her heartbeat with a stethoscope and the taking of blood for a blood count. She further testified that the defendant advised her to take Betty home and put her to bed; that she was to apply cold packs to the child's abdomen and to give her the pills which he gave to the witness in an envelope, upon which was written the direction "three every hour".

It is necessary to quote the following questions and answers in Mrs. George's direct examination so as to give an accurate view of the context and of the setting in which this particular testimony was given.  "Q. Did you have some conversation with him again about her condition?  A. Well, I called the next day because she wasn't improving at all and asked him if he couldn't come down.  First he told me to

keep on with the pills and the cold packs, that it would take a little time to respond. And I called him back again and I told him she was much worse and asked him to come down and he said he couldn't come down, he was too busy. And so I asked him to recommend—or he said perhaps I should call a surgeon and I asked him to recommend a surgeon as I had never had any dealings with surgeons and he said he couldn't think of any and then I had to do the best I could. Q. Betty isn't here, Mrs. George? A. Betty died."

Counsel for the defendant thereupon immediately notified the court that he had a motion to make and, after the jury had withdrawn, moved that the case be taken from the jury and passed. In support of this motion he argued that, since the defendant was not on trial for malpractice or any other accusation charging him with the death of the child, the reference to Betty's death, as made, "intentionally" injected into the case extraneous and highly prejudicial matter, which might reasonably arouse in the jury feelings of sympathy for Betty's mother and prejudice against the defendant to such an extent that they might disregard the charge upon which the defendant was actually on trial and say to themselves: "This little girl died, he is guilty, let's crucify him."

In reply to this claim of the defendant, counsel for the state said that he did not intend by his question to bring out the fact of Betty's death and that he did not expect the answer that the mother gave to that question; but he did not ask that such answer be stricken from the record with instructions to the jury that they disregard the same. In fact he opposed the defendant's motion to take the case from the jury saying: "However, had I *gone further* I would have every right to have this witness explain the absence of a witness to the Court and to the Jury." (italics ours)

The trial justice denied defendant's motion with expressions of regret over the unfortunate situation, noted the defendant's exception and ordered the trial to proceed, without striking from the record the answer to which the defend-

ant had so strenuously objected and which the state apparently had not intentionally solicited. As far as the jury was concerned, when the trial was resumed the objectionable answer stood as competent testimony in the case.

All the other testimony in the case, in so far as material, may be summarized as follows: First, Mrs. George testified that she expected to pay the defendant for his professional services but had not done so, because he had not sent her a bill; and second, the defendant introduced in evidence two certificates showing annual registration of the defendant by the state department of health certifying that he was "entitled to practice chiropractic" for the years ending October 31, 1939 and October 31, 1940, respectively. The defendant himself did not testify.

At the close of all the testimony the defendant moved for a directed verdict in his favor on the ground that being a duly registered chiropractor he was within his rights to treat the child in the manner and to the extent that he treated her. This motion was denied and the defendant's exception noted. The case was apparently given to the jury shortly before 5:45 p. m.

The transcript shows that the trial justice, upon representations by defendant counsel, recalled the jury twice for additional instructions. The first time was at "5:45 p. m.", when the jury withdrew "at 5:57 p. m."; and the second time at "6 p. m.", when the jury withdrew at "6:04 p. m." A verdict of guilty was returned by the jury at "6:15 p. m."

When the jury was recalled the first time, the trial justice, after disposing of the matters which had been brought to his attention by defendant's counsel, told the jury, of his own accord, that there was another matter that he should have mentioned to them in the original charge, namely, the testimony of Mrs. George "that her daughter passed away", as he understood it, "perhaps a month later, something like that." He then said that while all were profoundly sorry for the situation, it had no relation to the issue that the jury had to determine. "We don't know whether the little girl's death

was the result of any trouble that she had at this time or not, and we aren't permitted to guess. And so while it is a circumstance that causes us to feel sympathetic, perhaps, for the mother, yet it has nothing to do with the situation that we have to determine here and with the issue that we are trying to determine. So lay that aside and do not give that any consideration."

We will now consider the first exception, which is that the trial justice committed reversible error in denying defendant's motion to take the case from the jury on the ground of prejudice. Whether extraneous matter which is injected into a case is prejudicial must, in the first instance and within reasonable limits, be left to the sound discretion of the court in view of the circumstances of each particular case. It is the duty of the court to see to it that the parties are given a fair trial. The defendant, in the instant case, was entitled as of right to such a trial, and he should not have been exposed to the danger of prejudice that naturally might be engendered against him by a reference to Betty's death, especially when such reference is read in connection with its immediate context and one remembers that it was made by the child's mother in her direct examination.

Had the objectionable answer in question here been stricken from the record and had the jury then been directed to disregard the same, a closer question might have been presented. But the trial justice did not do this. The answer in question was allowed to stand as given, and the trial justice did not then or in his original charge instruct the jury to disregard such answer. In our judgment, the probability that the defendant might be prejudiced by the objectionable answer in question here was not removed by the belated admonition of the trial justice in his supplemental charge to the jury.

The testimony of Mrs. George that we have above quoted, in which the objectionable answer appears, is fairly open to the inference that Betty died shortly after the defendant had treated her and had refused to see her again. There is noth-

ing in the testimony that in any way indicates either the cause of her death or when she died. We find no warrant in the testimony for the trial justice saying in his charge to the jury that Betty died "perhaps a month later, something like that." This variance between the testimony as it stood of record and the recollection of that testimony as expressed by the court does not improve the situation.

Upon a careful examination of the entire record with special reference to the objectionable answer in its proper setting, we are unable to say that the defendant was not prejudiced as a result of that answer. Coming from the person and in the circumstances disclosed by the transcript, such answer might reasonably prejudice the minds of the jury so as to prevent them from reaching a fair and impartial verdict. An analogous situation was considered by us in *State* v. *Feeney,* 65 R. I. 438, 14 A. 2d. 667.

We are constrained to sustain defendant's first exception. On this view of the case, it is unnecessary to consider the other exceptions.

The case is remitted to the superior court for a new trial.

*John H. Nolan,* Attorney General, *Hyman Lisker,* Asst. Attorney General, for State.

*Charles A. Kiernan,* for defendant.