288 A.2d 494.

STATE *vs.* HOWARD W. TATE.

MARCH 17, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

[redacted]

JOSLIN, J. Howard W. Tate was tried and convicted by a jury in the Superior Court on a charge of rape. He is here pressing his exceptions to the trial justice's refusal to pass the case and to grant his motion for a new trial.

A mere outline of the evidence will suffice for our purposes. On the evening of September 5, 1969, the prosecutrix, then a girl of about 17 years, and some others went to a beach along the upper reaches of Narragansett Bay where they had a cookout. During the evening the prosecutrix, together with an acquaintance, Raymond Pariseau, left the group and walked along the beach. Some time thereafter Pariseau left her and then, according to prosecutrix, she was literally attacked by what she described as "a whole bunch of boys." They threw her to the ground, disrobed her, and held her arms and legs while several of the assailants raped her. She positively identified defendant as one of those who had carnal knowledge of her by force and without her consent.

Pariseau later returned to the beach, and offered her a ride which she accepted. He dropped her off at her home in the early morning hours. She did not immediately awaken her parents, but retired and waited until she arose at about 11:00 a.m. to tell them what had happened. Her father called the police and then took his daughter to the police station.

After relating the events of the previous night to the police, the prosecutrix was taken to a hospital where she was examined by a physician specializing in gynecology and obstetrics. He found her arms and legs bruised, and that she had "some form of trauma" to the

vulva and vagina. Those symptoms, as well as others observed on subsequent examinations, were in his opinion consistent with her statement that she had been raped. Indeed, he went so far as to say some of her injuries would not have resulted from consensual intercourse on several occasions with several individuals on the same day.

The defendant offered no testimony that in any way directly negated the state's evidence. Pariseau, however, testified on defendant's behalf that at no time during the ride home from the beach did the prosecutrix complain that she had been assaulted or raped. He further testified that en route they stopped, got out of the automobile, and went behind some bushes where they had intercourse two or three times.

On the basis of the foregoing evidence the jury returned a guilty verdict. Thereafter, the trial justice, in denying defendant's motion for a new trial, observed that the case was not very complicated, that it "rested essentially on the credibility of the witnesses as presented by the prosecution" and that "the jury was justified in finding the defendant guilty beyond a reasonable doubt." The defendant attacks that decision on the ground that it neither makes a reasonable reference to the evidence nor indicates the reasons underlying the trial justice's determination, and he argues that a decision deficient in these particulars should not receive the persuasive force which might otherwise be its just entitlement.

It is true that the trial justice's bench decision is sketchy and brief, that it fails to analyze the evidence extensively, and that it does not specifically identify which witnesses he believed and which he disbelieved. But we give a trial justice wide latitude with respect to the form of his decision, and we have never insisted that it be lengthy or that it contain an exhaustive analysis of the evidence, or that it literally tag the testimony of each witness as "credible"

or "incredible." *Notarantonio* v. *Damiano Bros. Welding Co.,* 101 R. I. 173, 177, 221 A.2d 473, 475 (1966); *Turgeon* v. *Rocks,* 96 R. I. 353, 356, 191 A.2d 606, 607 (1963); *Chase* v. *Goyette,* 85 R. I. 469, 473, 133 A.2d 123, 125 (1957). We require, however, that in the exercise of his independent judgment he weigh the evidence and pass upon the credibility of the witnesses, and that he give the reasons for his conclusions. *Handy* v. *Geary,* 105 R. I. 419, 435, 252 A.2d 435, 443 (1969); *McVeigh* v. *McCullough,* 96 R. I. 412, 428, 192 A.2d 437, 446-47 (1963).

When we look to the record in this case in order to test the trial justice's decision against these standards, we find that here, as in so many rape cases, there was no direct testimony from an impartial eyewitness. Instead, for the state there is the prosecutrix's statement that she had been ravished plus whatever corroboration it receives from the examining physician; and for the defense, there are only the inferences that might have been drawn either from Pariseau's testimony of what happened during the drive home or from the prosecutrix's failure to awaken her parents as soon as she returned home in order to tell them what had happened.

Given the evidentiary context of this case, we do not believe that defendant would, or could, have faulted the trial justice's performance of his obligations in passing upon the motion for a new trial had he summarized, even briefly, the testimony of the prosecutrix and of the examining physician, and had he then gone further and found that testimony "credible" and specifically rejected any contrary inferences. Yet, in effect, that is exactly what the trial justice did when he said that the case turned on the credibility of the prosecution witnesses, and that the jury was justified in finding defendant guilty beyond a reasonable

doubt. With those comments[1] he accepted the prosecutrix's testimony of what happened on the night of September 5, 1969, labeled it "credible," and thereby under *State v. Correia,* 106 R. I. 655, 664, 262 A.2d 619, 624 (1970) impliedly rejected the inferences which might have led to a contrary conclusion.

We are satisfied then that the trial justice properly performed his obligations when he passed on defendant's motion for a new trial, and since defendant does not argue that in doing so he either overlooked or misconceived any material evidence or that he was otherwise clearly wrong, we give his decision great weight and hold that he did not err in denying that motion.

The defendant's other exception is to the trial justice's refusal to grant his motion to pass the case. That motion was made while a police officer was testifying concerning certain articles of clothing worn by the prosecutrix on the night of the rape. It came at the end of the following colloquy:

"Q And they were in your custody and possession ever since?

"A No, they haven't.

"Q What did you do with them?

"A I brought them here during the last trial."

The defendant concedes, as he must, that the question of whether or not that final response demanded that the case be taken from the jury and a mistrial declared was

---

[1] In *Turgeon v. Rocks,* 96 R. I. 353, 191 A.2d 606 (1963), the trial justice's decision, upheld by us, was in substance no different from that at issue in this case. There, after briefly referring to the relevant testimony, the trial justice went on to say:

" '[T]here was quite a bit of conflict of testimony here and, of course, in such cases it is up to the jury to resolve that testimony. * * * I feel that they had sufficient evidence to go on and that their action in rendering a verdict for the plaintiff does substantial justice between the parties.' " *Id.* at 356, 191 A.2d at 607.

addressed to the trial justice's sound judicial discretion. *State* v. *Mandarelli,* 105 R. I. 696, 700, 254 A.2d 738, 740 (1969); *Romano* v. *Caldarone,* 78 R. I. 107, 112, 79 A.2d 763, 766 (1951); *State* v. *Nelson,* 19 R. I. 467, 470, 34 A. 990, 991 (1896). He argues, however, that the challenged statement's potential for engendering prejudice in the minds of the jurors was so great that even the cautionary instruction given by the trial justice to the jury at the time he denied the motion for a mistrial could not erase its harmful effect. In those circumstances, he said, it became impossible for him to obtain a fair trial, and a sense of justice and fair play required that the case be taken from the jury and passed. The defendant relies upon a sound legal principle. *Salimeno* v. *Barber,* 108 R. I. 705, 709-10, 279 A.2d 419, 421 (1971); *State* v. *Manning,* 67 R. I. 343, 23 A.2d 754 (1941); *Lavigne* v. *Ballantyne,* 66 R. I. 123, 17 A.2d 845 (1941). He has not, however, followed it up by even hinting at, much less pointing to, what possible prejudice or harmful effect the police officer's statement that he brought the clothing "here during the last trial" could possibly have had on the minds of the jurors. Hence, his exception must be overruled.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *John P. Toscano, Jr.,* Asst. Public Defender, for defendant.