322 A.2d 626.

## STATE *vs.* WILLIAM A. BOUDREAU.

JULY 26, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. Mr. and Mrs. Richard Patterson and their six sons live in a modest three-bedroom cottage which is located in the Elmwood section of Providence. At approximately 3 a.m. on July 5, 1970, Mrs. Patterson

was awakened by the noise of what she thought was some post-Fourth of July fireworks. She went to the front porch and saw several youths running down the street. The noise also awakened four of the boys who were sleeping in the upstairs bedrooms. Mr. Patterson is apparently a sound sleeper. He heard nothing. Mrs. Patterson woke him up. They had a bit of a discussion. Quiet returned to the neighborhood and in time all the Pattersons returned to the arms of Morpheus.

Later that morning when Mr. Patterson went out to his driveway he noticed the back window of a car, that had been parked there overnight, was shattered. An examination of the front of the house showed that it had been splattered by bullets. Mr. Patterson called the police. A next door neighbor told the police that at 3 a.m. on July 5 she had returned from a holiday vacation and while looking out a living room window, she saw Boudreau standing in front of the Patterson home with a gun in hand. She testified that he fired a series of shots into the Patterson property. One of Boudreau's friends corroborated the neighbor's testimony.

There was further evidence that sometime during the early portion of July 4 Boudreau had been involved in a fight with one of the Patterson's boys. At the time of this incident Boudreau was 30 years of age. It was apparent that he and some younger companions celebrated our Nation's birthday by having a party where the beer flowed like water. Sometime during the libation, Boudreau told his friends that "he was going to get him [Rodney Patterson]." The weapon used by Boudreau was a .22-caliber pistol.

The grand jury returned nine indictments against Boudreau. Eight charged him with committing an assault with a dangerous weapon on each of the eight Pattersons. The ninth indictment charged him with committing a

crime of violence while armed with a pistol, in violation of G. L. 1956 (1969 Reenactment) §11-47-3. A Superior Court jury returned guilty verdicts for all nine indictments. The defendant appealed.

In his appeal, Boudreau raises two interesting issues. He first argues that the trial justice erred when he refused to charge the jury that in order to sustain the assault indictments, the prosecution was required to prove that each of the eight Pattersons had been placed in fear of physical harm by the assault. The second facet of Boudreau's appeal is his reliance on what he says is the doctrine of "merger." In finding merit in this phase of the case, it will be seen that while Boudreau's reasoning is wrong, his conclusion is right.

## The Assault

It is obvious that had Boudreau's theory of the law of assault prevailed, there would be no convictions on eight of the indictments because the Pattersons were completely oblivious to the fact that Boudreau was shooting bullets in and around and about them. However, Boudreau's counsel's view of an assault, while it might have significance in the law of torts, is not the law where criminal behavior is concerned.

The trial justice in addressing himself to the assault issue charged the jury as follows:

> "Let me give you a definition of an assault. An assault as ordinarily defined is any unlawful attempt or offer with force or violence to do corporal hurt to another, whether from malice or wantonness. * * * I instruct you also that firing a loaded pistol or a gun in the direction of another with the intention of threatening that person is likewise an assault."

The majority of jurisdictions[1] define criminal assault as an apparent attempt to inflict a battery, or bodily contact, or harm upon another. *See also,* 1 Wharton, *Criminal Law & Procedure,* §329 (1957) and cases cited therein.

In *McCullers* v. *State,* 206 So.2d 30 (Fla..App. 1968), the court in addressing itself to the precise issue raised here said:

> "A criminal assault may be made upon a person even though he had no knowledge of the fact at the time. Perkins Criminal Law, 88-89 (1957), see cases cited at n. 62. It should be noted that herein lies the distinction between assault as a crime and assault as a tort. If the intended victim is unaware of the attempt, he has suffered no harm and is not entitled to compensation for the tort committed against him. Restatement, Torts 2d, §22. However, a criminal assault is an offense against the peace and dignity of the state as well as the invasion of private rights." *Id.* at 33.

The concept that apprehension of the impending harm is a necessary element in the crime of assault has been expressly or impliedly rejected when the question has been presented in other jurisdictions. It has not been incorporated in the statutory definition for assault in the criminal codes of any of the states.

We agree with the rationale of *Commonwealth* v. *Slaney,* 345 Mass. 135, 138, 185 N.E.2d 919, 922 (1962), wherein the Massachusetts court remarked that "practical considerations militate against acceptance of the defendant's contention." We view the criminal law as being designed primarily to preserve the public peace. The degree of

---

[1] *State* v. *Adamo,* 9 N. J. Super. 7, 74 A.2d 341 (1950); *State* v. *Stewart,* 73 Wash.2d 701, 440 P.2d 815 (1968); *State* v. *Wilson,* 218 Ore. 575, 346 P.2d 115 (1959); *Commonwealth* v. *Slaney,* 345 Mass. 135, 185 N.E.2d 919 (1962); *Woods* v. *State,* 14 Md.App. 627, 288 A.2d 215 (1972); *see also,* Perkins, *Non-Homicide Offenses Against the Person,* 26 B. U. L. Rev. 119 (1946).

imperturbability or fortitude of a victim, or the unaware-
ness of an intended victim, should not afford a defense to
the criminal prosecution of the wrongdoer. The guilt or
innocence of a person charged with assault depends en-
tirely upon what the wrongdoer does and intends and not
at all upon what the other apprehends, or does not appre-
hend.

Admittedly, there is some early authority to the effect
that apprehension of harm is essential to the offense.[2] In-
deed, it is urged upon us that our own case law gives
literal support to Boudreau's contention. In particular,
defendant cites *State* v. *Baker*, 20 R. I. 275, 38 A. 653
(1897). There, this court defined for the first and appar-
ently only time, the elements of the crime of assault in
stating:

> "An assault, as ordinarily defined, is any unlawful
> attempt or offer, with force or violence, to do a cor-
> poral hurt to another, whether from malice or wanton-
> ness. The offence *may consist, also,* in putting another
> in fear of violence. Thus it is said by Mr. Bishop
> that 'An assault is any unlawful physical force, partly
> or fully put in motion, creating a reasonable appre-
> hension of immediate physical injury to a human
> being.' " (emphasis added) *Id.* at 277, 38 A. at 654.

Boudreau's counsel argues that the reference in *Baker*
to Bishop's definition of an assault puts Rhode Island in
line with those jurisdictions which hold no fear in the
assaultee—no criminal assault. We think otherwise. While
at first blush the *Baker* case might be said to afford some
support for Boudreau's request to charge, the court's refer-
ence to Bishop's treatise was its awareness of the minority

---

[2] 1 Bishop, *New Criminal Law* (8th ed. 1892) §548, 336 at 337, defines
"assault" as including "a reasonable apprehension of immediate physical
injury." *See also,* 1 Wharton, *Criminal Law & Procedure* §330 at 676
(1957); *People* v. *Deitz,* 86 Mich. 419, 49 N.W. 296 (1891); *State* v.
*Daniel,* 136 N. C. 571, 48 S.E. 544 (1904).

view as to what constitutes a criminal assault. In fact, Baker's conviction was upheld even though the victim was unaware that he had been shot at.

The trial justice's refusal to embrace Boudreau's view of the law of criminal assault was correct.

## The Merger

Boudreau's counsel has characterized the second phase of this appeal as involving the doctrine of "merger." A merger, at common law, involved an act the commission of which constituted both a felony and a misdemeanor. In such instances it was said that the misdemeanor was merged into the felony and a defendant could be punished only for the felony. While there has been a tendency to describe the issue presented here as "Identity of Offenses," or "Divisibility and Merger of Offenses," we prefer to tell it as it is. We are dealing with Boudreau's constitutional right to be protected from "double jeopardy." This right which in its classic sense bars a second prosecution following an acquittal or conviction is afforded by both the fifth amendment of our Federal Constitution and art. I, sec. 7 of our state's constitution. *See State* v. *Trivisonno,* 112 R. I. 1, 307 A.2d 539 (1973).

Section 11-47-3 makes it a felony for a person to commit, or attempt to commit, a "crime of violence when armed with or having available any firearm." A "crime of violence" is defined in §11-47-2 as including "* * * murder, manslaughter, rape, mayhem, robbery, burglary, breaking and entering, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony."

Before trial the "merger" defense was invoked by a motion to dismiss either the assault indictments or the violent crime indictment. The whole thrust of the defense's argument was that since both offenses rise out of

the same act and because proof of one offense is also proof of the other, the motion for dismissal should have been granted.

In *State ex rel. v. Berberian*, 109 R. I. 309, 284 A.2d 590 (1971), this court adopted the test for determining whether an accused stands in danger of being tried twice for the same offense that is set forth in *Blockburger* v. *United States*, 284 U. S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932),[3] wherein the Supreme Court held that:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

When viewing the elements of the two alleged offenses on the facts of this case, we find the crimes in this particular instance to be essentially the same. In order to prove Boudreau guilty of the assault with a dangerous weapon, it is necessary to prove the same elements as are required to convict him on the charge of the commission of a felony with the use of a firearm.

No proof of any additional facts is required. A loaded revolver is a dangerous weapon per se. Once the elements constituting the assault charge were established, those of the other offense necessarily had been established also.

The relief sought by defendant is a remand to the Superior Court for a new trial. We do not believe such a remand is appropriate.

After conviction Boudreau was placed on a probationary status on the indictments charging the assaults on the six sons. He received a 10-year suspended sentence on the

---

[3]In *Gore* v. *United States*, 357 U. S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), the Supreme Court reaffirmed the *Blockburger* decision.

assault indictment relating to Mrs. Patterson and he received a three-year prison sentence on the indictment charging an assault on Mr. Patterson. The trial justice imposed a three-year sentence on the violent crime indictment. It was to run concurrently with the other three-year sentence. Execution of both sentences was stayed pending our determination of this appeal.

When more than one sentence has been imposed where only a single sentence was proper, relief from the improper penalty has been provided in a variety of ways. *See State* v. *Mills,* 51 N. J. 277, 240 A.2d 1 (1968). In *People* v. *Lyons,* 50 Cal.2d 245, 324 P.2d 556 (1958), the California Supreme Court was faced with determining the correct procedure to be applied to an appellant who had been convicted on two counts of receiving stolen property and sentenced to concurrent terms for each crime. The court determined that only one sentence was proper and concluded:

> "In a situation such as this, if any substantial objective of justice would be served thereby, this court could reverse [both judgments], order such counts consolidated, and remand the cause for rearraignment of the defendant for sentence and for sentence on the consolidated count. Inasmuch, however, as it does not appear that here either the state or the defendant will be prejudiced by a simple reversal as to one count and affirmance as to the other, and as finality of adjudication will thereby be expedited, we conclude that the latter procedure is the more desirable." *Id.* at 275-76, 324 P.2d at 573.

It is obvious in the present case that the defendant has not been prejudiced by the imposition of the two concurrent sentences. We shall simply order reversal on the indictment based upon §11-47-3 and affirm the conviction of Boudreau on the charge of assault with a dangerous

weapon.[4]  In any event, at this point in time he is to serve only three years.

The defendant's appeal as it relates to the assault indictments is denied and insofar as it relates to the violent crime indictment it is sustained.  The cases are remanded to the Superior Court with direction to dismiss the committing a violent crime indictment.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Joseph A. Capineri,* for defendant.

---

[4]Other jurisdictions have achieved the same result by applying other rationales.  For example, in *O'Keith* v. *United States,* 158 F.2d 591 (5th Cir. 1946), the court there merely ordered the additional sentence expunged, while in *Green* v. *United States,* 274 F.2d 59 (1st Cir. 1960), *aff'd,* 365 U. S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670, *rehearing denied,* 365 U. S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201 (1961), the court refused to grant a defendant "* * * the paper satisfaction, for which relief he has not in fact asked, of having the sentences under Counts 1 and 2 vacated, leaving him only with the single sentence under Count 3." The court treated the impropriety of the sentences as a "technical matter" and refused to correct it on the grounds that the *defendant had not been prejudiced.*