371 A.2d 265.

STATE *vs.* JOSE M. GRULLON.

MARCH 17, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

Doris, J. The defendant, Jose M. Grullon, was indicted on January 31, 1975, by the grand jury on charges of assault with a dangerous weapon in violation of G. L. 1956 (1969 Reenactment) §11-5-2, carrying a pistol without a license in violation of §11-47-8, possessing a pistol during the commission of a crime of violence in violation of §11-47-3, and possessing a firearm after having been convicted of a crime of violence in violation of §11-47-5.

Trial was held before a jury in Superior Court which returned guilty verdicts on the first three charges after the trial justice had granted defendant's motion for acquittal on the charge of possessing a firearm after having been convicted of a crime of violence. The defendant sub-

sequently filed a motion for a new trial which was denied by the trial justice. He appeals to this court from the denial of this motion as well as from the denial of his motion for acquittal on the first three charges in the indictment.

The record discloses that the incident which led to the indictment and subsequent convictions occurred on the evening of December 23, 1974. On that evening, Mitchell Croker and his friend Roxanne Gomes were attempting to investigate the theft of some personal property from the apartment they shared in Providence at 34 Pennsylvania Avenue. They had been informed that one "Cookie" had taken the property and upon inquiring at Cookie's apartment, which was across the street from their own, they were told that he was visiting down the block at 9 Pennsylvania Avenue. Croker, Gomes and several others then proceeded down the block to see Cookie and ask him about the theft of the property.

After ringing the doorbell at 9 Pennsylvania Avenue and hearing no response, Croker blew the horn of a van parked in front of the building. Someone finally came to the door and Croker asked for Cookie. When Cookie came out, he and Croker had a discussion about the stolen articles. Several other people came out of the house during the discussion, and among them was defendant, Jose Grullon. The defendant began brandishing a gun in front of Croker's face, and was apparently ignoring the people from the house who were yelling "no, no, no." The defendant was saying such things to the now retreating Croker as "I'll kill you * * * I'll blow your head off." At this point, an unidentified man rushed up to Croker and tried to kick him. Croker jumped back and grabbed for the assailant's foot when defendant's gun discharged, hitting Croker around his right eyebrow. The shot sent Croker and his friends running back down the street while, according to

Roxanne Gomes, the people with defendant shot at them with rifles. Somehow, Croker managed to get to his car and drive to St. Joseph's Hospital where he was treated for his head wound.

The defendant was later arrested and charged on four separate counts with (1) assault with a dangerous weapon; (2) carrying a pistol without a license; (3) possessing a pistol during the commission of a crime of violence; and (4) possessing a pistol after having been convicted previously of a crime of violence. At trial, after presentation of the state's case, defendant made a motion for a judgment of acquittal on all four counts. The motion was granted as to the fourth count and denied as to the other three counts. Subsequently, the jury returned a verdict of guilty on the three remaining counts and defendant made a timely motion for a new trial. The motion was denied by the trial justice and defendant was sentenced on all three counts.[1] The defendant now appeals to this court from the denial of his motion for judgment of acquittal as well as the denial of his motion for a new trial.

I

The defendant's first argument is that he has been twice placed in jeopardy for the same incident in violation of the fifth and fourteenth amendments to the United States Constitution and article I, §7, of the Rhode Island Constitution. This claim centers on count 1, assault with a dangerous weapon, and count 3, possession of a firearm during the commission of a crime of violence. The defendant says that conviction on both of these counts stemming

[1]The sentences imposed were as follows:
Count 1—ten years suspended, probation for ten years;
Count 2—five years committed to run concurrently with time given for count 3 and consecutive to sentence now being served; and
Count 3—six years committed to run consecutive to sentence now being served and concurrent with sentence imposed under count 2.

from a single incident is forbidden by our decision in *State v. Boudreau,* 113 R.I. 497, 322 A.2d 626 (1974), as a violation of the constitutional right to be free from double jeopardy. As we noted in *Boudreau,* the standard used in this state for determining whether an accused is in danger of being twice placed in jeopardy is the same standard that has been enunciated by the United States Supreme Court. In *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Court said:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

In *Boudreau,* when we applied this standard to the two counts involving assault with a dangerous weapon and commission of a crime of violence while in possession of a firearm, we found a violation of the double jeopardy prohibition. We noted:

> "When viewing the elements of the two alleged offenses on the facts of this case, we find the crimes in this particular instance to be essentially the same. In order to prove Boudreau guilty of the assault with a dangerous weapon, it is necessary to prove the same elements as are required to convict him on the charge of the commission of a felony with the use of a firearm.

> "No proof of any additional facts is required. A loaded revolver is a dangerous weapon per se. Once the elements constituting the assault charge were established, those of the other offense necessarily had been established also." *State* v. *Boudreau, supra* at 503, 322 A.2d at 629.

The defendant would have us apply this same standard to his situation and find a violation of the prohibition against double jeopardy.

However, before we address this issue directly, there is

a procedural problem which must first be overcome. According to Super. R. Crim. P. 12(b)(2), the defense of double jeopardy must be raised as a pretrial motion or it will be considered as waived. Of course the rule also allows, in appropriate cases, for a grant of relief from the waiver by the court. We found that *Thornley* v. *Mullen*, 115 R.I. 505, 349 A.2d 158 (1975), a case with facts very similar to this one, was such an appropriate case. The reasons for the relief from waiver that was granted in *Thornley*, are not, however, applicable in this case.

In *Thornley*, the defendant was convicted of both assault with a dangerous weapon and committing a crime of violence while in possession of a firearm. His claim of double jeopardy was rejected by the trial justice as not being timely made and therefore waived under Super. R. Crim. P. 12(b)(2). We granted relief from the harsh effects of waiver because Thornley did not, at the time of his trial, know of our decision in *State* v. *Boudreau, supra*, since it had not as yet been rendered. Therefore we ruled that the record did not support the trial justice's finding of waiver and we allowed Thornley the benefit of our decision in *State* v. *Boudreau, supra*.

The defendant Grullon, on the other hand, had ample opportunity to learn of our decision in *State* v. *Boudreau, supra*, since it was rendered a full year before his trial. We would therefore be very reluctant to again circumvent procedural rules and consider his double jeopardy claim if it were not for the fact that the trial justice apparently considered it on its merits at the close of the state's case. The trial justice, in his discretion, apparently treated what was entitled a "motion for judgment of acquittal" as if it were a belated pretrial motion to dismiss under Super. R. Crim. P. 12(b)(2). This waiver of procedural deficiencies at the discretion of the trial justice and his hearing on the merits

of the motion, without opposition by the state, allows us to review this as if it were a 12(b)(2) motion.

Under these circumstances, we find that the trial justice should have applied our reasoning in *State v. Boudreau, supra,* and dismissed either count 1 or count 3, as together they violate the prohibition against placing a person twice in jeopardy. Accordingly, we will reverse this part of the decision and return the case to the trial justice for dismissal of one of the two offending counts and resentencing on the remaining count.[2] We reiterate that ordinarily this type of matter should be considered by way of a pretrial motion and may only be brought up at a later time at the discretion of the court for good cause shown. We have considered it at this time only because the trial justice, in his discretion, allowed the untimely raising of the claim and then proceeded to incorrectly apply our decision in *State v. Boudreau, supra.*

## II

The defendant next argues that his conviction for unlawful possession of a pistol must fall because the state failed to introduce evidence showing that he had no license for the pistol. He says that if the presumption contained in G. L. 1956 (1969 Reenactment) §11-47-27[3] either shifts the burden of proof as to the illegality of the possession or is

---

[2]Since the sentences imposed on counts 1 and 3 were not the same and were not to run concurrently, we cannot apply the same sentencing rationale as we did in *State v. Boudreau,* 113 R. I. 497, 503-05, 322 A.2d 626, 630 (1974).

[3]General Laws 1956 (1969 Reenactment) §11-47-27 reads as follows:

"Proof of unlawfulness of carrying.—No negative allegation of any kind need be averred or proved in any complaint under §§11-47-1 to 11-47-34, inclusive, and the carrying or use of any firearm contrary to the provisions of said sections shall be evidence that the possession, carrying or use of any such firearm is unlawful, but the respondent in any such case may show any fact that would render the possession, or use, or carrying of such firearm lawful."

construed to satisfy the reasonable doubt standard as to the illegality, he has been denied his right to due process of law.

This argument was briefly raised before the trial justice as part of the motion for judgment of acquittal at the close of the state's case under Super. R. Crim. P. 29. However, after the motion was denied, defendant proceeded to present his own evidence, and the right to appellate review of the motion was thereby waived. *State* v. *Colavecchio*, 111 R.I. 428, 303 A.2d 760 (1973); *State* v. *Franklin*, 103 R. I. 715, 241 A.2d 219 (1968); Super. R. Crim. P. 29 (Reporter's Notes). "Such a motion is addressed to the trial justice's discretion and no exception lies to its denial." *State* v. *Colavecchio*, *supra* at 431, 303 A.2d at 762. If defendant wanted to preserve this argument for appellate review, then he would have had to either renew the motion after the presentation of all the evidence or rest his own case at the time he made the motion. He chose to follow neither of these two prescribed alternatives. Therefore, the denial of his motion for judgment of acquittal, being within the discretion of the trial justice, is not reviewable in this court. *State* v. *Colavecchio*, *supra*.

The defendant further asserts that even if his Rule 29 motion is not reviewable, the court may pass on the merits of his argument as part of his motion for a new trial since the jury verdict was against the weight of the evidence. He says that since the state never presented any *affirmative* evidence that he had no license for the pistol, the jury verdict may not stand. However, the jury verdict followed from the trial justice's instructions regarding the effect of §11-47-27, which allowed them to find unlawful possession from mere possession, even without a "negative allegation of any kind" as to a license.

The defendant's counsel, after specifically being asked if he had any objections to the jury instructions, replied that

he did not. He was thus bound by them and could not be heard to challenge them as being incorrect after the jury reached its verdict. Unchallenged, the instructions as to the effect of §11-47-27 became the law of the case. *State v. Murphy*, 113 R.I. 565, 577, 323 A.2d 561, 567 (1974); *State v. Walsh*, 108 R.I. 518, 522-23, 277 A.2d 298, 301 (1971); Super. R. Crim. P. 30.

It is abundantly clear from the record that there was sufficient evidence from which the jury could have found possession of a pistol. And, combining this with the unchallenged statutory presumption of §11-47-27 as they were instructed to do by the trial justice, they could well have found unlawful possession of the pistol. Their finding was clearly not against the weight of the evidence.

### III

Finally, defendant argues that the trial justice abused his discretion in refusing to grant him a new trial by not properly exercising his independent judgment of the credibility of the witnesses who appeared at trial. We disagree. Although his review of the testimony of the two key witnesses was brief, the trial justice certainly showed he was convinced of their credibility. He even went so far as to say that the *minor* differences in the testimony of these key witnesses were understandable "in a situation of that sort where guns were fired and people were running." We can see from this that there is no question but that the trial justice exercised his independent judgment and chose to believe the state's witnesses. An extended discussion of the evidence was not essential. *State v. Camerlin*, 117 R.I. 61, 362 A.2d 759 (1976); *State v. Tate*, 109 R.I. 586, 288 A.2d 494 (1972).

The trial justice, as did the jury, believed the testimony of the state's witnesses. We see no reason to question this belief and we do not find that the trial justice overlooked or misconceived material evidence or was otherwise clearly

wrong in his denying the motion for a new trial. *See State v. Jefferson,* 116 R.I. 124, 353 A.2d 190 (1976).

Therefore, we find that, with the exception of the portion of his decision which is in conflict with *State v. Boudreau, supra,* the trial justice did not err in his judgment.

The defendant's appeal is granted in part and denied in part, the judgment appealed from is reversed in part and sustained in part, and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Julius C. Michaelson,* Attorney General, *John R. McDermott,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Joseph L. DeCaporale, Barbara Hurst, John A. MacFadyen III,* Asst. Public Defenders, for defendant.