STATE

v.

**William ANTHONY.**

No. 78–360–C.A.

Supreme Court of Rhode Island.

Nov. 18, 1980.

Dennis J. Roberts, II, Atty. Gen., Joel D. Landry, Asst. Atty. Gen., for plaintiff.

John A. MacFadyen, III, Chief Appellate Defender, Janice M. Weisfeld, Asst. Public Defender, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendant, William Anthony, from the judgments of con-viction entered after a jury trial in the Superior Court. The jury returned *guilty* verdicts on five felony counts under indictment No. 75–249: (1) the murder of Scott Prescott while in the commission of a robbery in violation of G.L. 1956 (1969 Reenactment) § 11–23–1; (2) conspiring to rob Scott Prescott in violation of § 11–1–1 and § 11–39–1; (3) the robbery of Scott Prescott in violation of § 11–39–1; (4) the possession of a firearm during the commission of a crime of violence in violation of § 11–47–3; and (5) the possession of a firearm after having been convicted of a crime of violence in violation of § 11–47–8.

The indictment also named Dennis Martin (Dennis) and Gail Ciampanelli (Gail) with defendant. Additionally, in the conspiracy count of the indictment, one Raymond Mandarelli, Jr., (Raymond) was named as an unindicted coconspirator.

Prior to trial, the trial justice granted the state's motion to sever Gail's trial on the basis that she would testify against defendants Anthony and Dennis. On February 4, 1977, however, Dennis changed his plea to guilty on all counts. With respect to defendant Anthony, trial commenced before a jury on February 1, 1977. The jury returned guilty verdicts on all counts of the indictment. Judgments of conviction were entered, and defendant appeals from these judgments.[1]

On January 8, 1975, after responding to a complaint of a shooting, officers of the Providence police department found the body of an adult male on the floor of a first level apartment on Oak Street. Subsequently the medical examiner at the scene

---

1. Initially, defendant also asserted on appeal that the trial justice committed error in imposing sentences for both the assault with intent to rob count and for the possession of a firearm during the commission of a crime of violence count of indictment when defendant had been simultaneously convicted of felony murder. In view of recent cases from this court, however, the state concedes that the defendant cannot be convicted of both the felony murder and the underlying felonies as this would constitute double jeopardy. *State v. Innis*, R.I., 391 A.2d 1158, 1167 n.7 (1978), *rev'd on other grounds*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *State v. Doyon*, R.I., 416 A.2d 130 (1980); *Mastracchio v. Houle*, R.I., 416 A.2d 116 (1980). Nor can the defendant be convicted of two crimes where identical elements were required to establish both crimes. *State v. Pope*, R.I., 414 A.2d 781 (1980); *State v. Grullon*, 117 R.I. 682, 371 A.2d 265 (1977); *State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974). Accordingly, judgments of conviction under counts 3 and 4 of the indictment should be vacated and the charges dismissed upon remand to the Superior Court.

pronounced the victim dead, determining that the death was a homicide caused by a shotgun wound of the chest.

. The testimony developed at trial established that the victim, Scott Prescott, had attempted to sell a pound of marijuana to Dennis and Gail at the home of Edward Tevyaw. Also present at the Tevyaw home on the evening of January 8, 1975, were Tevyaw's wife Lori, Yvonne Tevyaw, Doris and Margaret Owens, Steve Wooten, and Lorraine McMahon. These witnesses all testified that at approximately 8:30 p. m., two masked men kicked in the door of the apartment, entered, and ordered everyone to lie on the floor. One of the masked men brandished a gun about two feet eight inches long while the other masked man stood in the doorway empty-handed. It was further established that words were exchanged between the man with the gun and the victim. It was at that point that the gunman shot the victim, Prescott, and then fled out the doorway with his companion. These witnesses, however, were unable to identify defendant as one of the masked men.

Gail and Raymond were called to testify on behalf of the prosecution. Essentially their testimony established that, together with defendant and Dennis, they agreed to set up a purchase of marijuana from the victim at the Tevyaw home. The plan conceived by the group called for Dennis and Gail to signal defendant and Raymond by flipping on the light in the bathroom after negotiating the sale. Then, defendant and Raymond would come to the apartment and steal the marijuana. Gail identified defendant as one of the masked intruders, stating that she had seen him don a ski mask shortly before she entered the Tevyaw home.

During cross–examination of the witness Gail, the facts were disclosed that she was charged with murder, conspiracy to rob and robbery stemming from the January 8 incident. Moreover, her testimony revealed that if she cooperated with the prosecution and testified against defendant, the court would not impose a sentence in excess of five years for all charges. The testimony further revealed that Gail had been charged with harboring for an act unrelated to the present crime and that this charge was still pending. When defendant's attorney attempted to cross–examine her about whether she received a promise of leniency with respect to the harboring charge, the trial justice, after conducting a voir dire, denied defendant's request. In making this determination, the judge found no relevant nexus between the pending charge of harboring and the witness's appearance for the prosecution which connection would allow "the jury to suppose that the outstanding charge might affect the witness's credibility."

The issues on appeal are these: (1) whether the trial justice violated defendant's right to confrontation as guaranteed by the Sixth Amendment and due process clause of the United States Constitution and similar provisions of the Rhode Island Constitution by not allowing defendant to examine the witness about a previous criminal charge still pending resolution in order to establish bias or prejudice on the part of that witness and (2) whether the trial justice's failure to apply the "rule of lenity" in imposing separate sentences for both the murder and the possession of a firearm after a previous conviction of a crime of violence was error.

I

We shall address initially the issue of whether the trial justice, on cross–examination, should have allowed defendant to question or examine the witness concerning the pending charge of harboring. The defendant argues that according to the rules of evidence, and as a matter of constitutional right, he has a right to cross–examine Gail with regard to the pending charge. Furthermore, defendant contends that he should be allowed to direct this inquiry toward any and all pending criminal charges for the purpose of completely exposing the witness's motive or bias for testifying.

■ The United States Constitution's Sixth Amendment right of confrontation

guarantees an accused the right to an effective cross–examination in all criminal matters. It is the principal means by which the credibility of the witness and the truthfulness of his testimony can be tested. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). In a state criminal proceeding, this right is secured through the Fourteenth Amendment as well as through the Rhode Island Constitution. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *State v. Myers*, 115 R.I. 583, 350 A.2d 611 (1976); R.I. Const., art. I, sec. 10.

■ Most jurisdictions, including our own, however, have recognized that the scope of cross–examination is subject to the exercise of the trial justice's sound discretion. *State v. O'Brien*, R.I., 412 A.2d 231, 233 (1980); *State v. Eckhart*, 117 R.I. 431, 436, 367 A.2d 1073, 1075 (1977); *State v. Crescenzo*, 114 R.I. 242, 252, 332 A.2d 421, 427 (1975). But the exercise of this discretion must not unduly restrict a defendant's right to cross–examine. It is the essence of a fair trial that reasonable latitude be given the cross–examiner. This latitude should include an opportunity for a defendant to establish or reveal possible bias, prejudice, or ulterior motives as they may relate to the case being tried. *Davis v. Alaska, supra* 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353–54; *Alford v. United States*, 282 U.S. 687, 692–93, 51 S.Ct. 218, 219–20, 75 L.Ed. 624, 628 (1931); *United States v. Alvarez–Lopez*, 559 F.2d 1155, 1159 (9th Cir. 1977). *Accord, State v. Bennett*, R.I., 405 A.2d 1181, 1183 (1979); *State v. Chin Ting*, R.I., 136 A. 8, 10 (1927). Even though no obligation is imposed upon the court to protect the witness from being discredited by revealing his motivation for testifying, the court does have a duty to protect him from questions that go beyond the proper bounds of cross–examination. Questions exceeding the proper limits of cross–examination are those that harass, annoy, or humiliate the witness, or questions that are irrelevant or offer no probative value. Questions of this nature are subject to the control of the trial justice. *State v. Eckhart, supra*, 117 R.I. at 436, 367 A.2d at 1075–76. Moreover, this court has determined that the exercise of discretion by the trial justice in limiting the scope of cross–examination will not be disturbed except for clear abuse, and then only when such abuse constitutes prejudicial error. *Burns v. Janes*, R.I., 398 A.2d 1125, 1128–29 (1979); *State v. Sprague*, 113 R.I. 351, 364, 322 A.2d 36, 43 (1974); *State v. Carraturo*, 112 R.I. 179, 189, 308 A.2d 828, 833 (1973).

■ We do acknowledge that the defense is entitled to show that an accomplice–witness may have good reason to cooperate with the prosecution. This is one reason why it is important that a defendant be allowed to explore the partiality of a witness in order to establish interest, bias, or motive, thereby to discredit the witness and affect the weight of his testimony. *See Davis v. Alaska, supra* 415 U.S. at 315–16, 94 S.Ct. at 1110, 39 L.Ed.2d at 353 (effective cross–examination for bias of an adverse witness vital constitutional right); *State v. Ciulla*, 115 R.I. 558, 570, 351 A.2d 580, 587 (1976) (significant body of law holding that bias, interest or motive can be demonstrated on cross–examination). To limit completely the defense, however, from examining the motive for testifying or the possible bias of a witness is clearly an abuse of discretion. The issue in such a case becomes whether defense counsel was afforded an adequate opportunity to bring out considerations relevant to motive or bias. *See, e. g., United States v. Crumley*, 565 F.2d 945, 949–50 (5th Cir. 1978); *Farkas v. United States*, 2 F.2d 644, 647 (6th Cir. 1924); *United States ex rel. Annunziato v. Manson*, 425 F.Supp. 1272, 1276–77 (D.Conn. 1977), *appeal withdrawn* 556 F.2d 554 (2d Cir. 1977); *Flemmi v. Gunter*, 410 F.Supp. 1361, 1371 (D.Mass. 1976).

■ After a careful review of the record, we are unable to conclude that the court's limitation of the cross–examination regarding the pending harboring charge was error.

The trial justice in the instant case permitted the defense to cross–examine the accomplice–witness Gail extensively concerning promises she may have received from the prosecution concerning the charges against her in the indictment. The defense was able to achieve this goal when the witness admitted that in exchange for her testimony, she was promised a sentence of not more than five years' confinement for all charges or a suspended sentence. Although disallowing cross–examination on the harboring charge, the trial justice did not foreclose the defense from making inquiry in regard to her motives or bias in testifying for the prosecution. Counsel was afforded ample opportunity to persuade the jury that Gail's testimony had been elicited by a promise of favorable treatment from the prosecution for charges arising out of the January 8 murder and robbery. See State v. Chin Ting, 136 A. 8 (1927).

Had the circumstances been different, however, defendant's right to cross–examine effectively for interest, motive or bias might have been violated. For example, if only the harboring charge had been outstanding against Gail at the time she testified, then preventing defendant from inquiring about this charge might have constituted prejudicial error. See, e. g., Farkas v. United States, supra. But in the present case, the defense was allowed reasonable latitude to inquire into the outstanding charges under the indictment at issue and to explore the possibility of the witness's receiving immunity or favorable treatment. Therefore, defendant's objections lack validity. Moreover, to allow questions concerning the harboring charge without a proper demonstration of a nexus between that charge and a promise of leniency from the prosecution would go "farther afield than the trial [justice] was under any obligation to go." See State v. Hunter, 183 Wash. 143, 159, 48 P.2d 262, 269 (1935). In support of this conclusion, the record indicates that during the voir dire, the witness testified that she had received no promise for leniency in exchange for her testimony on the harboring charge. Furthermore, in view of the testimony already elicited from Gail concerning motive or bias, the testimony sought concerning the harboring charge is cumulative and would have served no end except for harassment of the witness. See, e. g. United States v. Elliott, 571 F.2d 880 (5th Cir. 1978); United States v. Smaldone, 484 F.2d 311 (10th Cir. 1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); People v. Graves, 54 Ill.App.3d 1027, 13 Ill.Dec. 192, 370 N.E.2d 1219 (1977).

In our judgment the trial justice's action in limiting the scope of cross–examination concerning Gail's pending harboring charge was not an abuse of discretion and therefore not reversible error.

## II

The defendant prior to trial moved unsuccessfully to dismiss count 5 of indictment No. 75–249 charging defendant with possession of a shotgun after a previous conviction of a crime of violence. He now argues that the trial justice erred in failing to apply the "rule of lenity" when he entered judgments of conviction both on the charge of murder and on the charge of possession of a firearm after a previous conviction of a crime of violence. The defendant asserts that under the "rule of lenity" and absent a clear legislative mandate, multiple convictions cannot stand.

When the meaning of a criminal statute is ambiguous, the policy of lenity in the construction of criminal statutes requires that the less harsh of two possible meanings be adopted. Its purpose is to prevent the pyramiding of sentences when the penalties have not been clearly authorized. See, e. g., Ladner v. United States, 358 U.S. 169, 177–78, 79 S.Ct. 209, 214, 3 L.Ed.2d 199, 205 (1958); Prince v. United States, 352 U.S. 322, 327–28, 77 S.Ct. 403, 406, 1 L.Ed.2d 370, 373–74 (1957); Bell v. United States, 349 U.S. 81, 83–84, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910–11 (1955).

We have held, however, that when the same act or transaction constitutes the violation of two distinct statutory provisions, the applicable standard is found in Blockburger v. United States, 284 U.S. 299,

52 S.Ct. 180, 76 L.Ed. 306 (1932) wherein the court stated,

> "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

*Accord, State v. Grullon,* 117 R.I. 682, 685–88, 371 A.2d 265, 267–68 (1977); *State v. Boudreau,* 113 R.I. 497, 503, 322 A.2d 626, 629 (1974).

The record in the instant case establishes that defendant, at the beginning of trial, stipulated to a previous conviction of a crime of violence. The evidence at the trial was sufficient to prove that defendant had in his possession a sawed-off shotgun that was in operating order. Thus, the facts as presented in the record indicate that there are two distinct statutory offences and that one requires proof of an additional fact that the other does not. We therefore find no violation of the standard as set forth in *Blockburger.*

In conclusion, we find that the statutory language of Rhode Island G.L. 1956 (1969 Reenactment) § 11–47–5[2] is unambiguous and requires no interpretation. As noted in this court's recent opinion in *State v. Robalewski,* R.I., 418 A.2d 817 (1980), the "rule of lenity" is inapplicable when the legislative statute is clear and unambiguous. *Id.,* 418 A.2d at 826. Section 11–47–5 not being ambiguous, we find that the trial justice committed no error in refusing to apply the "rule of lenity" on these facts.[3]

The defendant's appeal is sustained in part and denied in part; the judgment appealed from is affirmed in part and vacated in part. The judgments of conviction under count 1, count 2, and count 5 of indictment No. 75–249 are affirmed; the judgments of conviction under count 3 and count 4 are vacated and those counts of the indictment should be dismissed. This matter is remanded to the Superior Court for further proceedings in accordance with this opinion.

DORIS, J., did not participate.

---

**2.** General Laws 1956 (1969 Reenactment) § 11–47–5 provides in pertinent part:

> "No person who has been convicted in this state or elsewhere of a crime of violence * * shall purchase, own, carry, transport or have in his possession or under his control any firearm."

**3.** Even if we were to adopt a "rule of lenity," it would not have been applicable in the instant case.