**STATE**

v.

**Daniel Lee REIS.**

**No. 78–78–C.A.**

Supreme Court of Rhode Island.

June 3, 1981.

Dennis J. Roberts, II, Atty. Gen., Kathryn A. Panciera, Sp. Asst. Atty. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

MURRAY, Justice.

On November 3, 1976, a criminal information was filed in the Superior Court charging Daniel Lee Reis (Daniel) and his wife, Ramona Reis (Ramona), with several violations of the Rhode Island Controlled Sub-

stances Act.[1] Specifically, the information charged both Daniel and Ramona with unlawful possession of a controlled substance,[2] possession with intent to deliver a controlled substance,[3] maintaining a narcotics nuisance in their apartment,[4] and conspiracy to violate the Rhode Island Controlled Substances Act (hereinafter referred to as the act).[5] Additionally, Daniel alone was charged with maintaining a narcotics nuisance in his car.

The matter proceeded to a trial on October 13, 1977. Although Daniel and Ramona were each represented by separate counsel, they were tried together before a justice and a jury of the Superior Court. The jury subsequently returned a guilty verdict against Daniel on all counts of the information except the fifth one (that of conspiracy to possess a controlled substance and to possess with intent to deliver a controlled substance). With respect to Ramona, the jury returned a guilty verdict on the counts of possession of a controlled substance and of maintaining a narcotics nuisance. Ramona was found not guilty of the two other charges lodged against her.

After the close of all evidence, both Daniel and Ramona brought motions for judgment of acquittal. At that time, the trial justice deferred ruling on those motions. Later, after the jury had returned its verdict, defendants renewed their motions. The trial justice granted Ramona's motion for judgment of acquittal on the two counts upon which the jury found her guilty. Daniel, however, was not so successful as his wife. The trial justice denied his motion for judgment of acquittal as to all the counts upon which he was found guilty. It is the trial justice's denial of that motion which forms the basis of defendant's appeal.

A perusal of the record discloses the following facts. In July 1976, vice-squad officers from the Pawtucket police department placed under surveillance a two-family house located at 417–419 Pawtucket Avenue in the city of Pawtucket. The officers suspected that certain inhabitants of the premises were illegally selling drugs therein. At trial, Sergeant Charles Dolan (Dolan), one of the officers who participated in the surveillance, testified that at around 10:30 on the evening of July 26 he observed defendant drive a black 1966 Cadillac into the driveway of the premises. According to Sergeant Dolan, two men approached defendant as he alighted from the vehicle. The three spoke for a brief interval, after which the two men left and Daniel entered the premises.

The following morning Dolan appeared in the Fifth Division of the Rhode Island District Court in Pawtucket to apply for search warrants for the premises under surveillance. Two warrants were issued, one for the house at 417–419 Pawtucket Avenue, the other for the car that defendant was observed driving into the driveway the previous night.[6] At 1:30 that afternoon, Sergeant Dolan, accompanied by Detective Patrick McConaghy and two other officers, proceeded to the house in order to execute the warrants.

Sergeant Dolan testified at trial that upon their arrival at the premises, he and the other officers entered the building and climbed the stairs to the second floor. They paused at the door to the second-floor apartment and as they were about to knock on it, a "young boy" opened it from the inside and walked out. Sergeant Dolan

1. General Laws 1956 (1968 Reenactment) §§ 21–28–1.01—21–28–6.02, as enacted by P.L. 1974, ch. 183, § 2.

2. In violation of G.L. 1956 (1968 Reenactment) § 21–28–4.01(C)(1)(a), as enacted by P.L. 1974, ch. 183, § 2.

3. In violation of G.L. 1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L. 1974, ch. 183, § 2.

4. In violation of G.L. 1956 (1968 Reenactment) § 21–28–4.06(1)(a), as enacted by P.L. 1974, ch. 183, § 2.

5. In violation of G.L. 1956 (1968 Reenactment) § 21–28–4.08, as enacted by P.L. 1974, ch. 183, § 2.

6. The validity of these warrants is not challenged by defendant on appeal.

then asked the boy if his parents were inside. The boy responded in the affirmative. Dolan then knocked at the doorjamb and announced their presence and stated that they had a search warrant. According to Sergeant Dolan, the officers waited a few moments for a response. When none came, they knocked again and announced their presence and then entered the apartment.

Before beginning their search, the officers gave the warrants to Daniel and Ramona. Their search came to fruition in the bedroom closet. There, the officers found eight plastic bags, each containing around a hundred "purplish-bluish" and "mint-green" tablets. The officers also seized from elsewhere in the apartment some rent receipts and telephone bills. Detective McConaghy's search of the Cadillac yielded another bag containing a like quantity of the mint-green tablets similar to those found in the apartment.

Samples from the bags were sent to the toxicology laboratories at the Rhode Island Department of Health. At trial, two toxicologists from the Department of Health testified that they performed several tests on these samples and that the tests revealed that the samples contained phencyclidine, a drug classified under Schedule II of G.L. 1956 (1968 Reenactment) § 21–28–2.08, as enacted by P.L. 1974, ch. 183, § 2.

On appeal, defendant contends that the trial justice erred in denying his motion for judgment of acquittal on both counts of maintaining a narcotics nuisance, that his conviction on charges of both possession and possession with intent to deliver a controlled substance is a violation of the double-jeopardy clause of the Fifth and Fourteenth Amendments of the United States Constitution, and art. I, sec. 7 of the Rhode Island Constitution, and finally that there was insufficient evidence for the jury to return a guilty verdict on the crime of possession and possession with intent to *deliver a controlled substance.*

Turning now to defendant's first contention, we note that G.L. 1956 (1968 Reenactment) § 21–28–4.06(1)(a), as enacted by P.L. 1974, ch. 183, § 2, provides:

"Any store, shop, warehouse, building, vehicle, aircraft, vessel or any place whatever which is used for the unlawful sale, use or keeping of a controlled substance shall be deemed a common nuisance.

"(1) Any person who violates this subsection with respect to:

"(a) knowingly keeping and maintaining such a common nuisance as described in this section may be imprisoned for not more than five (5) years, and fined not more than one thousand dollars ($1,000), or both;

"* * *"

The defendant argued in support of his motion that in order for one to be found guilty of maintaining a narcotics nuisance, there must be a showing that the public was generally annoyed by the activity in question.[7]

We must assess defendant's arguments in light of the well-settled rule of statutory construction that in enacting a statute the legislature is presumed to have intended that every word, sentence, or provision has some useful purpose and will have some force and effect. *Providence Journal Co. v. Mason,* 116 R.I. 614, 624, 359 A.2d 682, 687 (1976). The Legislature is also presumed to know the state of existing relevant law when it enacts a statute. *Flather v. Norberg,* R.I., 377 A.2d 225 (1977); *Bailey v. Huling,* R.I., 377 A.2d 220 (1977).

In this regard, the use of the words "common nuisance" is significant. The adjective "common" and the phrase "common nuisance" are words of art used since the days of common law. In *State v. Russell,* 14 R.I. 506 (1884) this court stated that the offense of being a common night walker consisted not "of particular acts but of an habitual practice evidence by a series of acts." *Id.*

7. For the purposes of this appeal we interpret defendant's arguments to mean that there must be a showing of frequency or continuity before one can be convicted under this statute.

at 506.[8] Indeed, "[t]he whole fraternity (or sorority) of common vagrants, common brawlers, common scolds, common night-walkers, common drunkards, common prostitutes and common gamblers share the characteristic that their offenses are of a recurring and habitual nature." *Skinner v. State*, 16 Md.App. 116, 126, 293 A.2d 828, 834 (1972) (footnotes omitted). For example, the New Jersey Court of Errors and Appeals defined a common burglar as one "who by practice and habit is a burglar * * *." *Levine v. State*, 110 N.J.L. 467, 471, 166 A. 300, 302 (1933). Similarly, in *Commonwealth v. McNamee*, 112 Mass. 285 (1873), the Massachusetts court defined a common drunkard simply as one who is "an habitual drunkard." [9]

In other jurisdictions where the specific term "common nuisance" is incorporated into a statutory scheme, courts have held that those words retained their common-law characteristic of requiring a recurrence of the proscribed activity. In *Keeth v. State*, 193 Ind. 549, 139 N.E. 589 (1923), a prosecution for maintaining a common nuisance by selling liquor in violation of the prohibition laws, the Indiana Supreme Court held that

> "[t]he words 'common nuisance' as used in the statute carry with them a notion of continuous or recurrent violation. * * * The words 'maintains' and 'maintaining' denote continuous or recurrent acts approaching permanence. We therefore conclude that the case is analogous to those of keeping a gaming house * * * to the effect that the keeping of such a house is a continuous act, and * * * constitutes but one indivisible offense * *."

*Id.* at 550–51, 139 N.E. at 590. [Citations omitted].

The same conclusion was reached in *State v. Kapicsky*, 105 Me. 127, 73 A. 830 (1909), where the court held that resort to places for the consumption of liquor must be common and habitual for the place to be considered a common nuisance.

In light of the above, we conclude that the Legislature intended the words "common nuisance" to have their common-law meaning and that such meaning contemplates acts which are recurrent or of an habitual nature. To construe this language in any other manner would be to ignore the above-stated rules of statutory construction.

■ Turning now to the merits of the instant case, we note first that when a motion for a judgment of acquittal is made, the trial justice's review of the evidence is limited to that evidence which the state claims is capable of generating proof beyond a reasonable doubt. The trial justice must review this evidence in the light most favorable to the state, drawing therefrom all reasonable inferences which are consistent with the accused's guilt. The trial justice can neither assess the credibility of the witnesses nor the weight of the evidence at that time. *State v. Roddy*, R.I., 401 A.2d 23, 32 (1979); *accord, State v. Distante*, 118 R.I. 532, 375 A.2d 212 (1977); *State v. Johnson*, 116 R.I. 449, 358 A.2d 370 (1976).

Even when the evidence in the case at bar is viewed in this context, it is clear that defendant's conviction on these two counts cannot stand. A thorough examination of the record discloses only what we discussed above, that the police had placed the premises under surveillance; that one night defendant was seen talking with two other people as he got out of his car; that the police searched the premises the next day, pursuant to a valid warrant; and that the "fruits" of the search were some tablets, which toxicologists later determined to contain phencyclidine. There was absolutely no evidence, apart from this single incident, that defendant used his apartment or his car for the unlawful keeping or sale of a controlled substance.

8. This court also intimated that the offenses of being a "common scold" and a "common barrator" encompassed a similar requirement of habitualness. *State v. Russell*, 14 R.I. 506 (1884).

9. For an interesting list of other "common" offenses, *see Skinner v. State*, 16 Md.App. 116, 126–27 n.1, 293 A.2d 828, 834 n.1 (1972).

The facts of this case are not unlike those in *Skinner v. State*, 16 Md.App. 116, 293 A.2d 828 (1972). In that case, contraband drugs were found in the defendant's car on the one day it was searched; and the court held that under the Maryland version of the Uniform Controlled Substances Act,[10] "proof * * * of a single day's violation was legally insufficient to permit the case to go to the jury." *Id.* at 129, 293 A.2d at 836.

Accordingly, we hold that the term "common nuisance" as used in § 21-28-4.06 requires a showing of more than an isolated instance of the prohibited activity. *Accord, Wells v. State*, 170 Ind.App. 29, 351 N.E.2d 43 (1976); *Skinner v. State*, 16 Md.App. 116, 293 A.2d 828 (1972). Hence, the judgments of conviction entered against defendant on the two counts under § 21-28-4.06 are therefore reversed.

## II

The defendant next contends that his conviction for both possession and possession with intent to deliver the drugs constitutes double jeopardy in violation of the Fourteenth Amendment to the United States Constitution and art. I, sec. 7 of the Rhode Island Constitution.

Before ruling on this contention, however, we must point out that defendant never raised this argument before the trial justice. Indeed, defendant concedes this fact in the brief he submitted in support of his appeal. It is a well-settled proposition that we shall not consider constitutional questions when they are raised for the first time on appeal. *E.g, State v. Turley*, 113 R.I. 104, 318 A.2d 455 (1974).

It is true, however, that we have also stated that if a defendant's failure to raise the constitutional issue is not a "deliberate bypass," if it does not constitute "sandbag-ging" by defense counsel, and if the record discloses that the breach complained of will constitute "something more than harmless error," we may consider the merits of the constitutional question raised on appeal. *State v. McGehearty*, R.I., 394 A.2d 1348, 1352 (1978). Nevertheless, cases in which we have dispensed with our usual procedural requirements under *McGehearty* have involved novel constitutional claims which could not be anticipated at trial. For example, in *Infantolino v. State*, R.I., 414 A.2d 793 (1980), we considered for the first time on appeal the defendant's challenge to the trial justice's instructions on the issue of the burden of proof in a case in which the defendant had asserted the defense of self-defense.

In that case, the trial justice had instructed the jury that when a defendant asserted the defense of self-defense it was his burden to prove the defense by a preponderance of the evidence. The instructions were fully in accord with the then-prevailing law. We noted that the defendant's trial antedated our ruling in *In re John Doe*, R.I., 390 A.2d 920 (1978), that once the defendant introduced evidence of self-defense it is incumbent upon the state to prove beyond a reasonable doubt that he did not so act. *Id.* 390 A.2d at 926.

In the instant case, defendant relies principally upon *State v. Anil*, R.I., 417 A.2d 1367 (1980), a case that postdated defendant's trial. In that case, we held that the offenses of possession with intent to deliver and delivery of a controlled substance merged under the double-jeopardy clause. In arriving at our conclusion in *Anil*, we stated that the test that controls our determination on this issue was set down by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct.

10. The statute, Md.Ann.Code, art. 27, § 286(a)(5) provided, at the time, that

"(a) Except as authorized by this subheading, it shall be unlawful for any person:
"* * *
"(5) To keep or maintain any common nuisance which shall mean any dwelling house, apartment, building, vehicle, vessel, aircraft, or any place whatever which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia, as defined in subsection (d) of § 287 of this subheading."

180, 76 L.Ed. 306 (1932).[11] We also stated that since 1971 we have utilized the *Blockburger* test. *See State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974); *State ex rel. Scott v. Berberian*, 109 R.I. 309, 284 A.2d 590 (1971).

Additionally, several months before defendant's trial began, our decision in *State v. Grullon*, 117 R.I. 682, 371 A.2d 265 (1977) was filed. There, we stated that a defendant's failure to raise the issue of double jeopardy as a pretrial motion under Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure constitutes a waiver of that issue except in extraordinary circumstances.[12] *Id.* at 687, 371 A.2d at 267. *Grullon* presented such a set of circumstances only because the trial justice had considered the double jeopardy claim at the close of the state's case on the defendant's motion for judgment of acquittal.

Those extraordinary circumstances were also present in *Thornley v. Mullen*, 115 R.I. 505, 349 A.2d 158 (1975). There, although the issue was not raised as a pretrial motion, we considered it on appeal because at the time of his trial, the defendant could not have known of our later decision in *State v. Boudreau*, 113 R.I. 497, 322 A.2d 626 (1974).

■ No such circumstances are present in the instant case. *State v. Anil*, R.I., 417 A.2d 1367 (1980), announced no change in the law nor did it announce a novel constitutional claim that defense counsel was unable to appreciate at the time of trial. *See State v. Duggan*, R.I., 414 A.2d 788 (1980). Because defendant neither raised this issue

as a pretrial motion nor advanced it in his motion for judgment of acquittal, we are constrained in this case to hold that defendant's failure to raise this issue below precludes our review of it on appeal under Rule 12(b)(2).

Finally, defendant contends that the trial justice erred in denying his motion for judgment of acquittal on all of the charges against him. In light of our disposition of defendant's appeal relating to his convictions on the nuisance charges, it is unnecessary for us to discuss these issues any further.

■ With regard to the convictions of possession and possession with intent to deliver a controlled substance, we find no error in the trial justice's denial of the motion. Without a wholesale regurgitation of the facts discussed above, we find that there was ample evidence, when viewed in the light most favorable to the state, to allow the case to go to the jury.

Accordingly, the defendant's appeal is sustained in part and denied in part, the judgments of conviction entered for counts 3 and 4 of the information are vacated, and the judgments of conviction entered for counts 1 and 2 are sustained. The case is hereby remitted to the Superior Court for further proceedings.

SHEA, J., did not participate.

---

11. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

12. Rule 12(b)(2) of Super.R.Crim.P. provides:
 "*Defenses and Objections Which Must Be Raised.* The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution

or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment, information, or complaint to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."